UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ANGELA SPINELLI and OLINVILLE ARMS,
INC.,                                                      02 Civ. 8967

                     Plaintiffs,                            OPINION

      -against-

THE CITY OF NEW YORK,

                     Defendant.

----------------------------------------X

A P P E A R A N C E S:

            Attorney for Plaintiffs

            LAW OFFICE OF DAVID A. ZELMAN
            612 Eastern Parkway
            Brooklyn, NY  11225
            By:  David A. Zelman, Esq.


            Attorney for Defendant

            MICHAEL A. CARDOZO
            100 Church Street
            New York, NY  10007
            By:  Robin Binder, Esq.
                 Mark W. Muschenheim, Esq.

**Sweet, D.J.**

Plaintiffs Angela Spinelli ("Spinelli" or the "Plaintiff") and Olinville Arms, Inc. ("Olinville") (collectively, the "Plaintiffs") have moved pursuant to Federal Rule of Civil Procedure 59 for a new trial.  Upon the conclusions set forth below, the motion is denied.

## Prior Proceedings

This action against Defendant the City of New York ("City" or the "Defendant") stems from the October 9, 2001 suspension, by the New York City Police Department ("NYPD") License Division ("License Division"), of the licenses of Olinville to sell guns based on an NYPD inspection that occurred the prior day that revealed significantly compromised security at the store.  After Olinville addressed the compromised security, on December 5, 2001, its licenses to sell guns were reinstated.

In 2002, Olinville and its owner, Spinelli, commenced this action.  In 2007, the City's motion for summary judgment

1

was granted, and Plaintiffs' cross motion was denied.

Plaintiffs appealed, and in 2009 the Second Circuit held that

Plaintiffs' Fourth Amendment rights were not violated when the

NYPD inspected Olinville, and that their due process rights were

not violated when the License Division suspended Olinville's

licenses due to exigent circumstances that required prompt

action (namely, the inadequate security).  Spinelli v. City of

New York, 579 F.3d 160, 167-68, 170-71 (2d Cir. 2009).  The

Second Circuit also held that Olinville's due process rights

were violated because the License Division's post-suspension

procedures (the suspension notice and the lack of a post-

suspension hearing) were inadequate and remanded to determine

damages.  Id. at 172, 175.  Prior to trial, in an October 26,

2010 Decision, this Court held that the License Division was

required to provide Olinville a hearing to contest the

suspension within thirty days of the suspension, by November 8,

2001.


        This action was tried before a jury from November 8 to

November 11, 2010.  At the beginning of the trial, the City

conceded that Olinville was entitled to lost profits between

November 16 and December 5, 2001 that stemmed from the

suspension.  In addition to various exhibits introduced by both

sides, five witnesses were called by Plaintiffs: Olinville's

employees Juan Cabrera ("Cabrera") and Dominick Soricelli

("Soricelli"), Spinelli, Spinelli's doctor Sundararag Mohandoss

("Dr. Mohandoss"), and, by deposition, Olinville's accountant,

Marvin Cohen ("Cohen").   Two witnesses were called by the City:

the License Division Director, Thomas Prasso ("Director Prasso")

and, by deposition, Olinville's attorney during the 2001

suspension, John Chambers ("Chambers").   On November 11, 2010,

the jury returned a verdict of ten thousand dollars for

Olinville and zero dollars for Spinelli.


**The Rule 59 Standard**


The Second Circuit has held that a Rule 59 motion for

a new trial should be denied "unless the trial court is

convinced that the jury has reached a seriously erroneous result

or that the verdict is a miscarriage of justice." AIG Global

Sec. Lending Corp. v. Banc of Am. Sec., LLC., 386 Fed. Appx. 5,

7 (2d Cir. 2010) (quoting Medforms, Inc. v. Healthcare Mgmt.

Solutions, Inc., 290 F.3d 98, 106 (2d Cir. 2002)); see Malmsteen

v. Berdon, LLP, 369 Fed. Appx. 248, 249 (2d Cir. 2010) (quoting

Medforms, 290 F.3d at 106); Tesser v. Bd. of Educ., 370 F.3d

314, 320 (2d Cir. 2004) (quoting Hugo Boss Fashions, Inc. v.

3

Fed. Ins. Co., 252 F.3d 608, 623-24 (2d Cir. 2001)).  When considering whether the jury's result was seriously erroneous or a miscarriage of justice, "a court should rarely disturb a jury's evaluation of a witness' credibility." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998) (citing Dunlap-McCuller v. Riese Organization, 980 F.2d 153, 157 (2d Cir. 1992); Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992)).  Although some courts have stated that "a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict... in practice courts do not grant new trials as freely as the language suggests." In re MTBE Products Liability Litigation, 739 F. Supp. 2d 576, (S.D.N.Y. 2010) (quoting Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (2d Cir. 2000)) (internal quotation marks omitted).  To sufficiently demonstrate that a new trial is appropriate, "the movant bears a heavy burden." Goetz v. Hershman, No. 06 Civ. 8180, 2010 U.S. Dist. LEXIS 70983, at *32 (S.D.N.Y. Jul. 14, 2010) aff'd and vacated on other grounds in 2011 U.S. App. LEXIS 10311 (2d Cir. May 20, 2011).

**The Verdict of Nominal Damages for Spinelli's Emotional Distress Claim Was Not Seriously Erroneous or Against the Weight of Evidence**

Spinelli contends that the jury's verdict awarding
Spinelli only nominal damages for emotional distress resulting
from inadequate notice or lack of a post-suspension hearing was
seriously erroneous.  The City asserts that, as a matter of law,
Spinelli could not seek emotional distress damages based on her
due process claim under 42 U.S.C. § 1983 because a plaintiff
must demonstrate, among other things, a deprivation of a right
protected by the Constitution.  See Paul v. Davis, 424 U.S. 693,
696-97 (1976).  To determine whether due process rights were
violated, the threshold question is whether the plaintiff has
been deprived of a liberty or property interest that is subject
to due process protection.  See Board of Regents of State
Colleges v. Roth, 408 U.S. 564, 569-70 (1972).  Any property
interests are "created and their dimensions are defined by
existing rules or understandings that stem from an independent
source...."  Id. at 577.

The City contends that Spinelli cannot assert a due
process claim since her purported interest in her reputation,
without more, is not a property right protected by due process,
see Paul, 424 U.S. at 711-12, and Spinelli has not pointed to
any New York law that provides her "any legal guarantee of
present enjoyment of reputation which has been altered as a

result of [defendants'] actions."  See Id.  Plaintiffs contend

that Spinelli was upset by the fact that she did not know the

reasons for the suspension of Olinville's licenses.


     After the October 9, 2001 suspension, Olinville's

agent, Chambers, who was retained on October 22, sent a fax to

the NYPD License Division.  Chambers also testified that within

24 hours of being retained he had spoken with the NYPD License

Division and had been told about the specific security problems.

Under New York law, "knowledge acquired by an agent acting

within the scope of its agency is imputed to the principal, even

if the information was never actually communicated."  N.Y.

Marine & Gen Ins. Co. v. Tradeline LLC, 266 F.3d 112, 122 (2d

Cir. 2001) (citing Christopher S. v. Douglaston Club, 713

N.Y.S.2d 542, 543 (2d Dep't 2000)).  See also Meisel v.

Grunberg, 651 F. Supp. 2d 98, 110 (S.D.N.Y. 2009) (quoting

Cromer Fin. Ltd. v. Berger, 245 F. Supp. 2d 552, 559 (S.D.N.Y.

2003)).


     In accordance with this Court's October 26, 2010

Decision, as a matter of law Spinelli was not entitled to any

damages pre-dating November 8 for the License Division's failure

to give Olinville a post-suspension opportunity to contest the

6

suspension.  Also as a matter of law, Spinelli is not entitled to any emotional distress damages for the NYPD's October 8, 2001 inspection of Olinville, or to the immediate suspension (without providing Olinville an opportunity to be heard) of Olinville's licenses on October 9, 2001.  Spinelli, 579 F.3d at 167-68, 170-71.  Spinelli does not take issue with the City's position at trial that Olinville's licenses would not have been reinstated on November 8, 2001, or that the earliest date to recover any damages was November 16, the day after the NYPD conducted an inspection, and the day that the License Division determined that Olinville's licenses should be reinstated.  This leaves only the period between November 16 and December 5, 2001.

          The jury did not award damages for emotional distress for the period between November 16 and December 5, 2001.  Dr. Mohandoss, Spinelli's doctor, testified that in October 2001 he made a house call to Spinelli because she was depressed.  While Dr. Mohandoss gave her a sample of Paxil (enough medication to last only a few days), he did not record this visit in his chart notes.  There is also no evidence that Dr. Mohandoss ever wrote Spinelli a prescription for Paxil (or any other anti-depressant) or that he referred her to a psychiatrist.  Dr. Mohandoss's contemporaneous chart note from his examination of Spinelli on

October 13, 2001 did not document any evidence of depression and that chart note documents conditions that Spinelli had both before the October 8 suspension and after the December 5 lifting of the suspension.   Plaintiffs contend that these conditions, such as hypertension, were aggravated by the emotional distress purportedly suffered by Spinelli.   Evidence of such aggravation, however, at best only exists for the October 13 visit, which pre-dates the compensable period (November 16 to December 5, 2001).   Spinelli saw Dr. Mohandoss only once during the potentially compensable period, and that was for a boil on the underarm.   Dr. Mohandoss testified that neither depression nor high blood pressure would cause a boil.

The Plaintiffs have relied on Atkins v. New York City, 143 F.3d 100 (2d Cir. 1998).   In Atkins, the court explained that if a § 1983 plaintiff cannot prove actual injury from a violation of his constitutional rights, that plaintiff is only entitled to nominal damages.   Id. at 103 (citing Carey v. Piphus, 435 U.S. 247, 248 (1978)).   The court further stated that "[t]o recover compensatory damages plaintiff must prove that his injuries were proximately caused by the constitutional violation."   Id. (citing Gibeau v. Nellis, 18 F.3d 107, 110 (2d Cir. 1994)).   Here, it was appropriate for the jury to award

8

nominal damages to Spinelli because Spinelli did not prove
actual injury proximately caused by the deprivation of her due
process rights.  Moreover, the Court in Atkins noted that
"[w]here the evidence would permit the jury to find that, while
both justifiable and [unconstitutional conduct] was used, [and]
the injury was caused by the use of the former, an award of
nominal damages [for the unconstitutional conduct] is proper."
Id. (citing Gibeau, 18 F.3d at 110).  Here, even assuming
arguendo that Spinelli might have suffered some injury, any
injury that she might have suffered was a result of the
suspension of Olinville's licenses, which the Second Circuit
held to have been justifiable.  Moreover, the evidence indicates
that any emotional distress that Spinelli may have suffered was
in October 2001, well before the compensable period.

**The Jury Award of Lost Profits to Olinville Was Not Inconsistent
with the Lack of an Award for Emotional Damages to Spinelli**

          Plaintiffs also contend that the jury's verdict
awarding $10,000 for lost profits to Olinville but nothing for
emotional distress to Spinelli was inconsistent.  When a court
is "confronted with a potentially inconsistent jury verdict, the
court must adopt a view of the case, if there is one, that
resolves any seeming inconsistency."  Turley v. Police Dep't. of

City of New York, 167 F.3d 757, 760 (2d Cir. 1999) (internal

citations and quotation marks omitted).  The Supreme Court has

explained that focusing on "one possible view of the case which

will make the jury's finding inconsistent[,]" while failing to

attempt to reconcile any apparent discrepancies, "results in a

collision with the Seventh Amendment."  See Atlantic & Gulf

Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364

(1962) (internal citations omitted).  Therefore, courts cannot

disregard a jury's verdict and order a new trial until they have

"attempt[ed] to reconcile the jury's findings, by exegesis if

necessary."  See Gallick v. B & O Railroad Co., 372 U.S. 108,

120 (1963) (internal citations omitted).  When a jury reaches a

verdict, after having been given proper instructions, that

verdict "must be upheld where there is a reasonable explanation"

for any seeming inconsistency.  Hallinan v. Republic Bank &

Trust Co., 519 F. Supp. 2d 340, 347 (S.D.N.Y. 2007) (quoting The

Cayuga Indian Nation of New York v. Pataki, 165 F. Supp. 2d 266,

281 (N.D.N.Y. 2001)).


         Plaintiffs contend that, given the lost profits award,

Spinelli was ipso facto entitled to emotional distress damages.

Pl. Affirm. in Supp. at 6-7 ("it is inevitable that a small

business owner [whose business is] shut down . . . will suffer

some emotional distress").  Contrary to Plaintiffs' assertion,
Olinville was not "shut down"; rather, while the licenses to
sell guns were suspended, Olinville was not prohibited from
selling its other products.  Moreover, to the extent that
Spinelli suffered any emotional distress before November 16,
2001, she was not entitled to any recovery for the reasons
stated above.  As noted above, Spinelli is not entitled to
damages for emotional distress caused by the "shut down" of her
gun business, but for the distress caused by aspects of that
"shut down" which violated her due process rights, which she has
not proven.  Plaintiffs have set forth no authority for the
proposition that Spinelli was ipso facto entitled to emotional
distress damages given the lost profits award.


        Plaintiffs have also relied on Crockett v. Long Island
Railroad, 65 F.3d 274 (2d Cir. 1995), to support their
contention that the jury's verdict cannot be rationally
reconciled.  In Crockett, the Court held that a new trial was
appropriate because the jury's verdict was "irreconcilably
inconsistent." Crockett, 65 F.3d at 278.  The Court found that
because Crockett presented "uncontroverted testimony that the
surgery would be necessary when the pain increased, ... the jury
could not logically award all costs for the surgery and no

11

damages for future pain and suffering." Id.  Here, Spinelli

failed to meet her burden of proving that she suffered any

emotional distress as a result of Olinville's license

suspension.  See Miner v. City of Glen Falls, 999 F.2d 655, 663

(2d Cir. 1993) (to recover emotional distress damages, a

plaintiff must "convince the trier of fact that he actually

suffered distress because of the denial of procedural due

process itself") (quoting Carey, 435 U.S. at 263).  In Miner,

the Court cited Biggs v. Village of Dupo, 892 F.2d 1298, 1304-05

(7th Cir. 1990), with approval for its holding that pointing to

circumstances where emotional distress is likely is insufficient

to establish that distress.  999 F.2d at 663.  Courts will not

"invalidate a judgment entered on the basis of a facially valid

and proper jury verdict and require a costly and wasteful

retrial merely because of a speculative possibility that

facially consistent jury findings might have represented an

inconsistency."  Aczel v. Labonia, 584 F.3d 52, 59 (2d Cir.

2009).  See also Atlantic & Gulf Stevedores, 369 U.S. at 364

("Where there is a view of the case that makes the jury's

answers to special interrogatories consistent, they must be

resolved that way.").

**The Jury Instructions and the Special Verdict Form Do Not
Require A New Trial**

Plaintiffs also contend that the jury instructions pertinent to Spinelli's claim were inconsistent with the Special Verdict Form "which may have confused the jury" and that the Special Verdict Form should have specifically identified the emotional distress damages that Spinelli sought.  Pl. Aff. in Supp. at 8-9.  While Plaintiffs proffered their own special verdict form during the charging conference, the Plaintiffs failed to object when that form was rejected.  Moreover, thereafter the Plaintiffs never objected to the use of the Special Verdict Form used by the jury.

Plaintiffs' failure to object waived their argument. Fed. R. Civ. P. 51(c)(1) mandates that parties who wish to object to a Court's jury instruction or verdict sheet "must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  Moreover, "to avail itself of relief under this Rule, a party must object before the jury retires to deliberate."  Jarvis v. Ford Motor Co., 283 F.3d 33, 56 (2d Cir. 2002).  The Second Circuit has "emphasized that failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection."  Id. at 57 (quoting Lavoie v. Pac. Press &

13

Shear Co., 975 F.2d 48, 55 (2d Cir.1992)) (internal alterations
and quotation marks omitted).


          In the absence of a party's timely objection, a
Court's review is limited to the determination of whether the
jury instruction or verdict sheet contained a fundamental error.
Id. at 62.  A fundamental error is an error "so serious and
flagrant that it goes to the very integrity of the trial" and
includes an error which "deprive[s] the jury of adequate legal
guidance to reach a rational decision."  Id. (quoting Shade v.
Housing Auth. of New Haven, 251 F.3d 307, 313 (2d Cir. 2001);
Werbungs v. Collectors' Guild, Ltd., 930 F.2d 1021, 1026 (2d
Cir. 1991)).  An "[o]bjection to an inconsistency between two
general verdicts that is traced to an alleged error in the jury
instruction or verdict sheet is properly made under Fed. R. Civ.
P. 51."  Id. at 56.


          The Court in its jury charge specifically identified
the elements that Plaintiffs must establish to recover emotional
distress damages and elsewhere in the jury instructions noted
several times that Plaintiffs sought emotional distress damages
on behalf of Spinelli.  The openings, the testimony and the
closings focused on Spinelli's claim of emotional distress

                              14

damages.  The fact that the special verdict form did not
explicitly include the word "emotional distress" does not
provide grounds for retrial.

The Plaintiffs also contend that the special verdict
form should have listed the same requirements for emotional
distress that were listed in the jury charge.  Since Plaintiffs
never raised this issue at the charging conference, it is
waived.  See Smith v. Lightning Bolt Prods., 861 F.2d 363, 370
(2d Cir. 1988) (objections to the "form or substance of such
questions" are waived unless the party objects prior to the jury
retiring) (citing Bohack Corp. v. Iowa Beef Processors,
Inc., 715 F.2d 703, 710 n. 8 (2d Cir. 1983)).  Moreover, it is
within the trial court's discretion to determine the appropriate
language for and formulation of questions that are provided to
the jury on the verdict form.  Id. (citing Cann v. Ford Motor
Co., 658 F.2d 54, 58 (2d Cir. 1981), cert. denied, 456 U.S. 960
(1982)).  See also Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490
F.3d 130, 141 (2d Cir. 2007) (quoting Vichare v. AMBAC Inc., 106
F.3d 457, 465 (2d Cir. 1996)); Boyd v. LOEB Partners Corp., No.
00 Civ. 7052, 2000 U.S. App. LEXIS 26617, at *4 (2d Cir. Oct.
19, 2000) (citing Smith, 861 F.2d at 370-71).

15

The Special Verdict Form and the jury charge were not inconsistent.  The Special Verdict Form asked about the damages allegedly suffered by Spinelli:  both for emotional distress and loss of reputation.  Had the emotional distress language been added to the Special Verdict Form it would have omitted the loss of reputation component of damages that Spinelli sought.  While the Special Verdict Form did not repeat verbatim the elements Spinelli needed to prove to recover emotional distress damages, the form was not inconsistent with the jury charge since it asked what damages (collectively the emotional distress and any loss of reputation damages) Spinelli had suffered.  What comprised those damages had already been explained in the jury charge and made clear during the trial.

Plaintiffs also argue that the court erred when it instructed the jury that Plaintiffs must establish that Spinelli's emotional distress was due to a loss of reputation caused by the License Division's failure to provide adequate notice and an adequate post-suspension hearing.

During the charging conference, the Plaintiffs initially took issue with the court's proposed charge that Spinelli must prove loss of reputation.  Following a lengthy

16

discussion among counsel and the Court (see Def. Ex. 10, at 328-332), the following was stated:

> Mr. Muschenheim [Defendants' counsel]:  If [Spinelli] does not have a claim, then she has to prove at least a harm to reputation. ...
>
> The Court:  Well, that's the issue.
>
> Mr. Zelman [Plaintiffs' counsel]:  Judge, why don't we do this.  I don't want to revisit the whole issue.  I don't consent, but if you want to leave it the way it is, you could leave it the way it is.
>
> The Court:  Well, you were the one that raised the issue.  If you don't want it, [great], next ... .

Def. Ex. 10, at 332.  Moreover, at the conclusion of the charging conference, the Court stated the following:

> The Court:  ... I'll report - no, I don't have to now.  You withdrew the objection.  We're ready to go.

Def. Ex. 10, at 337.  Plaintiffs did not take issue with the Court's conclusion, and thereafter never objected to the jury charge given by the Court.  Plaintiffs thus waived this argument.  See Jarvis, 283 F.3d at 57.

Finally, it was necessary that an element of Spinelli's emotional distress claim be harm to reputation since reputation is arguably a property interest. See, e.g., Def. Ex. 10, at 329 (The Court:  "the loss of reputation is a property interest which gives her standing"); cf. November 8, 2010 Decision, at 3 ("Spinelli may recover for emotional damages if she establishes [emotional damages]… (3) through loss of business relationships ... ."). Otherwise, Spinelli would be seeking emotional distress damages for a violation of due process that was unrelated to her - as opposed to Olinville's - liberty or property interest (i.e., her reputation). See Board of Regents, 408 U.S. at 569-70 (threshold question is whether a liberty or property interest is subject to due process protection).

Plaintiffs' reliance on Ellis v. Blum, 643 F.2d 68 (2d Cir. 1981) and Miner, 999 F.2d 655, is misplaced.  In both cases, the plaintiff sought damages for emotional distress resulting from the defendants' violation of the plaintiff's individual due process rights:  in Ellis, her continued right to social security benefits, 643 F.2d at 71, and in Miner, his right to continued employment by the defendant city, 999 F.2d at 656.  Importantly, in Miner, the court emphasized that, prior to

18

being awarded damages, the trier of fact must be convinced that
the plaintiff actually suffered emotional distress.   999 F.2d at
663.  Here, Spinelli received only nominal damages because she
simply failed to demonstrate to the jury that she suffered any
actual compensable distress.   Moreover, Plaintiffs' continued
reliance on Sorranno's Gasco, Inc. v. Morgan, 874 F.2d 1310 (9th
Cir. 1989), to argue that Spinelli may assert a claim for
emotional distress as a result of the license suspension that
violated Olinville's property interest, is unavailing.   Unlike
the shareholders in Sorranno's Gasco, Spinelli is not asserting
First Amendment or retaliation claims, which provided direct and
independent claims for damages that were separate and distinct
from the corporate entity's due process claims.   See Id. at
1318-19.   See also Robinson v. Davis, No. 07 Civ. 265, 2010 U.S.
Dist. Lexis 110147, at *6-7 (D. Vt. Oct. 15, 2010) (non-profit
president's First Amendment retaliation claim was separate and
distinct from corporate entity's constitutional claims).

          Plaintiffs also attempt to argue that Spinelli was the
licensee, and thus did not have to establish harm to reputation.
Plaintiffs rely on the archaic Principal Agent definition in the
rifle and shotgun dealer section of the Rules of the City of New
York ("RCNY").   To start, Plaintiffs never proffered any

                              19

evidence that shows that Spinelli ever obtained a Principal

Agent license, or even ever applied for such a license.  Such a

failure is not surprising, given the testimony of the Director

of the License Division, Tom Prasso:

> Q: . . . are you aware of anyone who has ever been
> issued a principal agent license by the license
> division?
>
> A:  No, I'm not.

Def. Ex. 10, at 281.  Moreover, Plaintiffs' reliance on the

Principal Agent definition is misplaced.  The definition of

rifle and shotgun dealer provides:

> Dealer in rifles and shotguns.  The term "dealer in
> rifles and shotguns" shall mean any person, firm,
> partnership, corporation or company who engages in the
> business of purchasing, selling, keeping for sale,
> loaning, leasing, or in any manner disposing of any
> rifle or shotgun.  Dealer in rifles and shotguns shall
> not include a wholesale dealer.

38 RCNY § 1-02.  And the definition of "Principal Agent"

provides:

> Principal agent.  The term "principal agent" refers to
> the person who is in active charge of the dealership.
> Dealer's licenses are issued to individuals.  Every
> premises in which rifles and shotguns are sold
> requires an individual dealer's license.  Thus if a
> company owns several stores each store would require
> its own individual dealer's license and the manager of
> the store would normally be considered the principal

20

> agent.   Individual owners of stores who do not
> actively participate in the operation of their store
> may designate a responsible person as the "principal
> agent."

38 RCNY § 1-02.  Under the foregoing provisions the principal

agent is merely the point person ("the person who is in active

charge") of the store that sells rifles and shotguns, and these

provisions do not create a property interest separate and

distinct from Olinville's, which is the licensed dealer in

rifles and shotguns.


**Evidence of the Working Conditions at the License Division Was
Not Prejudicial**

    Plaintiffs also argue that the Court erred when it

permitted License Division Director Prasso to testify about the

working conditions at the License Division following the

September 11, 2001 terrorist attacks.  Plaintiffs contend that

this testimony was both irrelevant and prejudicial.  Pl. Affirm.

in Supp. at 12-13.  Director Prasso's testimony (which all

together takes up 23 pages of the transcript) on this subject

was limited to responding to one question.  Moreover, neither

Director Prasso's response to that one question nor his other

testimony attempted to rely on the post-September 11th

conditions to limit the City's liability for damages; rather,

the response to that one question provided background for the period at issue in this lawsuit.  The response to this one question did not unfairly prejudice the jury.

Plaintiffs also argue that Director Prasso's testimony was irrelevant, and that it may have confused the jury since the jury "may have understood from the introduction of this evidence, that the Defendants was [sic] not responsible for some portion of the Plaintiffs' actual damages because of the difficulties it was having at the time."  Pl. Affirm. in Supp. at 13.  Plaintiffs' argument ignores the fact that during both the opening and closing the City specifically conceded that it was responsible for damages from November 16 to December 5, 2001, and more importantly, that the Court's instruction to the jury similarly stated as much.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for a new trial is denied.

New York, NY
July // , 2011

ROBERT W. SWEET
U.S.D.J.

22